CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
January, 12, 2026
LAURA A. AUSTIN, CLERK
BY: s/ KELLY BROWN
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **LEAH WILLIAMS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No.: 7:25-cv-00254 |
| | ) |
| **FRIENDSHIP HEALTH AND REHAB** | ) |
| **CENTER, INC., d/b/a FRIENDSHIP** | ) |
| **RETIREMENT COMMUNITY, and** | ) |
| **FRIENDSHIP FOUNDATION,** | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION

Plaintiff Leah Williams, proceeding *pro se*, alleges that Defendants Friendship Health and Rehab Center, Inc. and Friendship Foundation (collectively, "Friendship"), failed to pay her full wages or benefits and subjected her to discriminatory treatment in violation of the Virginia Wage Payment Act ("VWPA"), the Fabor Labor Standards Act ("FLSA"), the United States Constitution, the Virginia Constitution, the Employment Retirement Income Security Act ("ERISA"), Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), the Virginia Human Rights Act ("VHRA"), and Virginia common law. Friendship moves to dismiss Williams's claims. Dkt. 8. For the reasons stated below, Friendship's motion is **GRANTED**. Williams's claims are **DISMISSED WITH PREJUDICE**.

### FACTS

Williams worked as a Manager Account Receivable for Friendship Health and Rehab Center, Inc. from April 2015 to April 2017. The core of this litigation centers on her allegation that Friendship systematically underpaid her throughout her employment. Williams alleges that Defendants paid her "only $22.285 per hour" when she was "assigned to Pay Grade 9, which

corresponds to a wage range of $45.00-$49.99 per hour." Dkt. 1-1 ¶¶ 13-14. To support this allegation, Williams submits a document titled "Employee Pay Information," which contains a line indicating Williams's "Pay Grade/Step" as 9 with a corresponding pay band of $45.00-49.99. *Id.* at 20.[1] Another line lists Williams's actual pay rate as $22.825. *Id.*[2]

Critically, Williams alleges—in an effort to avoid a significant statute of limitations problem—that she was "unable to discover the wage violation until recently" due to Friendship's fraudulent concealment. *Id.* ¶ 25. Williams does, however, attach pay statements she received reflecting her earnings from 2016 and 2017, *id.* at 17–18, as well as W-2 forms showing her wages earned in 2017, *id.* at 22.

Williams also alleges that she suffered from a disability at the time of her employment and after separation, "which impaired their ability to discover the wage theft and assert their legal rights." *Id.* ¶ 33. In support, Williams attaches an award letter from the Social Security Administration finding that she became disabled on February 15, 2017. *Id.* at 13–16. In another

---

[1] The Court's analysis is based solely on the allegations in the Complaint and attached documents. I do not consider factual assertions made for the first time in Williams's opposition to the motion to dismiss, as such assertions cannot supplement or amend the pleadings at the motion to dismiss stage. *See Bermeo v. Andis*, No. 24-2047, 2025 WL 3762068, at *4 (4th Cir. Dec. 30, 2025) (explaining that a district court considering a Rule 12(b)(6) motion is "limited to considering the sufficiency of the allegations set forth in the complaint and the documents attached or incorporated into the complaint" (quoting *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023))).

[2] According to Friendship, it never used the pay grade system mentioned in this document. *See* Dkt. 1-1 at 31.

letter dated March 10, 2025, Williams states that the SSA's declaration of disability "remains in full effect." *Id.* at 12.

In addition to her wage and benefit claims, Williams alleges that Friendship "engaged in unlawful discrimination against Plaintiff based on race, sex, and disability." *Id.* ¶ 9. Specifically, she argues that she was subject to unequal pay, unfair disciplinary actions or adverse employment decisions, a hostile work environment, and retaliation. *Id.* ¶ 10. Williams further alleges that Friendship retaliated against her "after reporting discrimination and/or wage violations." *Id.* ¶ 47.

## **STANDARD OF REVIEW**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Legal conclusions, however, are not entitled to the same presumption of truth. *Id.* at 678; *Twombly*, 550 U.S. at 555 (noting that while detailed factual allegations are not required, a plaintiff must still provide more than labels, conclusions, or a "formulaic recitation of the elements of a cause of action"). As Williams proceeds *pro se*, her pleading is liberally construed, and her Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). Nevertheless, a *pro se* plaintiff must "demonstrate more than a sheer possibility that a defendant has acted unlawfully" and "articulate facts that, when accepted as true, demonstrate he

3

has stated a claim entitling him to relief." *Hodge v. Gansler*, 547 F. App'x 209, 210 (4th Cir. 2013) (internal quotation marks omitted).

## ANALYSIS

**I.  Statute of Limitations**

As a preliminary matter, the Court must address whether Williams's claims are time-barred.

The Virginia Wage Payment Act (Count I) carries a three-year statute of limitations. Va. Code § 40.1-29(L). Williams alleges that she left her employment with Friendship in April 2017, so the limitation period expired on any wage and hour claim in April 2020—three years after she received her last paycheck. *See Jones v. iGo Mktg. & Ent. LLC*, No. 1:22-CV-03095-JRR, 2023 WL 5880152, at *4 (D. Md. Sept. 11, 2023) ("It is generally accepted that a cause of action accrues for statute of limitation purposes at each regular payday immediately following the work period during which services were rendered and for which overtime compensation is claimed." (internal quotation marks omitted)).

A cause of action under the Fair Labor Standards Act (Count II) has a two-tiered statute of limitations for wage and hour claims under 29 U.S.C. § 255(a): a standard two-year period from the date the cause of action accrued for most violations, which extends to three years for willful violations. Williams's claims under the FLSA were therefore time-barred by April 2020 at the latest.

A claim for denial of due process under the Fourteenth Amendment of the United States Constitution and Article I of the Virginia Constitution (Count IV) are subject to Virginia's two-year statute of limitations for personal injury suits. *See DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *Sabet v. E. Virginia Med. Auth.*, 611 F. Supp. 388, 397 (E.D. Va.), *aff'd*, 775

F.2d 1266 (4th Cir. 1985). Williams's due process claims arise from "the wrongful deprivation of Plaintiff's employment rights, wages, benefits, and legal protections." Dkt. 1-1 ¶ 32. These claims necessarily accrued before she left her employment in April 2017, so the statute of limitations expired at the latest in April 2019.

The Employment Retirement Income Security Act (Count V) does not prescribe a specific statute of limitations for benefit claims, so courts generally apply the most analogous state law. In Virginia, the contract statute of limitations is appropriate, with a limitations period of five years for written contracts. Va. Code § 8.01-246(2); *see Bd. of Trs. for Hampton Roads Shipping Ass'n-Int'l Longshoremen's Ass'n v. Stokley*, 618 F. Supp. 2d 546, 555 (E.D. Va. 2009).

The claims Williams alleges for workplace discrimination under Title VII, the American Disabilities Act, and the Virginia Human Rights Act (Counts VI and VII) are subject to a two-stage statute of limitations system that requires exhaustion of administrative remedies before filing suit. A charge must be filed with the Equal Employment Opportunity Commission ("EEOC") and/or the Virginia Office of Civil Rights within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a); Va. Code § 2.2-3905. After receiving a right-to-sue letter, the plaintiff must file suit within 300 days of the alleged unlawful employment practice. In this case, the attached exhibits show that Williams filed an EEOC charge on June 30, 2024, more than seven years after her employment ended with Friendship. Dkt 1-1 at 28–29. Additionally, while Williams's attachments show that she

5

requested a right-to-sue letter in September 2024, *id.* at 30, it is not clear whether or when she received such a letter.

Claims for Intentional Infliction of Emotional Distress (Count VIII) under Virginia law are subject to a two-year statute of limitations. *Christmas v. Arc of the Piedmont, Inc.*, No. 3:12CV00008, 2012 WL 2905584, at *6 (W.D. Va. July 16, 2012); *Coles v. Carilion Clinic*, 894 F. Supp. 2d 783, 797 n.7 (W.D. Va. 2012). Williams alleges that Friendship "engaged in extreme and outrageous conduct, including: repeatedly subjecting Plaintiff to discriminatory treatment and a hostile work environment." Dkt. 1-1 ¶ 51. Williams's claims would have accrued during her time of employment, meaning the statute of limitations expired no later than April 2019.

In sum, Williams's employment ended in April 2017, and she filed her lawsuit nearly eight years later in March 2025. Under normal limitations periods, Williams's wage claims expired by April 2020, her civil rights and IIED claims expired by April 2019, and her discrimination claims are barred by the exhaustion requirement. As to Williams's ERISA claim, letters from Metropolitan Life Insurance Company indicate Williams's claim for long-term disability benefits was denied June 6, 2024, and that decision was upheld July 31, 2024. *See id.* at 34–40. Because the statute of limitations for an ERISA benefits claim typically begins when an employee receives a final denial of benefits after exhausting administrative remedies, only Williams's ERISA claim appears to be timely filed. Finally, Williams admits that her claims were "brought outside of the statute of limitations." *Id.* at 12. However, she asks that the court find that the statute of limitations was tolled under the doctrines of fraudulent concealment or legal disability.

Whether federal or state tolling doctrines apply depends on the nature of the underlying claim. For claims arising under federal law, courts apply federal tolling principles. Conversely,

6

for state law claims, courts must apply the tolling rules of the forum state. *See Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945); *DePaola*, 884 F.3d at 486. In this case, regardless of whether the Court applies federal or state tolling doctrines to Williams's various claims, her theories fail.

### A. Fraudulent Concealment

The doctrine of fraudulent concealment will toll the statute of limitations under both federal and state law until the plaintiff discovers the fraud. *See Supermarket of Marlinton, Inc. v. Meadow Gold Diaries, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995). Under federal law, the plaintiff bears the burden of showing fraudulent concealment and must demonstrate: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Id.* (citation omitted). Virginia law similarly recognizes fraudulent concealment as a basis for tolling but imposes a more stringent standard. *See* Va. Code § 8.01-229(D). The plaintiff must show that the defendant undertook "affirmative acts" intended to conceal the cause of action and that such acts prevented the plaintiff from discovering the claim within the statutory period. *Newman v. Walker*, 618 S.E.2d 336, 339–40 (Va. 2005). Virginia courts have consistently held that the concealment must be more than passive nondisclosure; the conduct must involve intentional acts designed to mislead or obscure the truth. *See, e.g.*, *Grimes v. Suzukawa*, 551 S.E.2d 644, 646 (Va. 2001); *Evans v. Trinity Indus., Inc.*, 137 F. Supp. 3d 877, 882 (E.D. Va. 2015) (applying Virginia law).

Here, Williams contends that Friendship fraudulently concealed facts about her pay discrepancy. This argument fails under both federal and Virginia standards. First, the remittances Williams received when paid during her employment reflected her true pay rate. *See* Dkt. 1-1 at

7

17–18. Similarly, the "Employee Pay Information" document relied upon by Williams openly displays both the Pay Grade 9 designation and her actual pay rate of $22.825 per hour. *Id.* at 20. Second, Williams does not identify any acts by Friendship to conceal the existence of her claims. Even under the more liberal federal rules, a plaintiff must "make distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been before made." *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974) (internal quotation marks and citation omitted). Williams's claim rests on the allegation that Friendship "knowingly concealed [Williams's] wage discrepancy" by "falsely stat[ing] that the 'pay grade' system was not used, despite payroll records showing that Plaintiff was assigned Pay Grade 9." Dkt. 1-1 ¶¶ 23-24. Accepting this as true, Friendship's statement was nonetheless made on March 6, 2025, in response to Williams's demand letter for payment of wages. *See id.* at 31. Because the statement was made after Williams alleged that Friendship failed to pay her the wages she was owed, it could not have concealed the facts that make up the basis for Williams's claim. Finally, Williams fails to plead that she exercised reasonable diligence. She does not allege any efforts to investigate her pay structure or personnel file, compare wages with similarly situated employees during her employment, or inquire about discrepancies during the six-year gap between her employment and her alleged discovery. Williams also cannot explain why she could not have discovered that she did not receive the proper hourly pay during her employment with Friendship when she received regular pay statements showing her hourly rate. Moreover, the fact that she obtained the "Employee Pay Information" document from Friendship in response to her disability claim suggests that the

8

document was reasonably discoverable. Accordingly, the doctrine of fraudulent concealment does not rescue Williams's untimely claims.

### B. Disability

Both federal and Virginia law allow for equitable tolling on the basis of disability or incapacity in some circumstances. However, even assuming the most permissive tolling rules apply, Williams is not entitled to equitable tolling for any of her present claims.

Under federal law, equitable tolling is available only in rare circumstances. The Supreme Court established that "a statute of limitations runs against all persons, even those under a disability, unless the statute expressly provides otherwise." *Vogel v. Linde*, 23 F.3d 78, 80 (4th Cir. 1994) (citations omitted). Further, a plaintiff seeking equitable tolling must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," preventing timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Mental or physical disability may qualify as an extraordinary circumstance, but courts require specific evidence that the disability rendered the plaintiff unable "to function generally or in relationship to the pursuit of her rights." *See Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (finding that equitable tolling is inappropriate where plaintiff alleged only that she suffered from "paranoia, panic attacks, and depression").

Virginia law, in turn, provides for disability-based tolling under Va. Code § 8.01-229(A)(2), which suspends the statute of limitations if the plaintiff is "incapacitated" at the time the cause of action accrues. A person is deemed incapacitated if she is so adjudged by a court of competent jurisdiction or if it otherwise appears to the court or jury that the person was

incapacitated during the limitations period. *Id*; *see also Heim by Brittain v. Puckett*, No. 1:25CV00004, 2025 WL 2164610, at *6 (W.D. Va. July 30, 2025).

      Here, Williams argues that she "suffered from a qualifying disability under Va. Code § 8.0l-229(A)(2), which impaired their ability to discover the wage theft and assert their legal rights within the standard statute of limitations." Dkt. 1-1 ¶ 33. In support of this contention, Williams attaches an award letter from the Social Security Administration indicating that she became disabled in February 2017. *Id.* at 12. This letter is insufficient to satisfy either the federal or state standard. SSA determinations are based on whether a claimant is able to engage in substantial gainful activity—not whether the claimant is legally incapacitated or unable to pursue litigation. Additionally, no statutory exception to the statute of limitations exists here with respect to Williams's various claims as required by federal law, and Williams does not allege a judicial finding of incapacity as required by state law. Williams also does not provide specific facts about the nature or severity of her disability, how the disability prevented her from reviewing pay statements or employment documents, or medical evidence supporting the disability claim. Moreover, in her letter dated March 10, 2025, Williams represents that the SSA's declaration of disability "remains in full effect," suggesting that her disability did not prevent her from discovering her claims in 2023 or from filing suit in 2025. *See id.* Because

Williams fails to plausibly allege impairment or incapacitation beyond mere assertion, equitable tolling does not apply.

Nearly all of Williams's claims are therefore time-barred under the applicable limitation periods. Only her ERISA claim remains. Although the statute of limitations presents a complete defense to all claims, for completeness, I will address the substantive merits of each claim.

**II.    Wage Claims Under the FLSA and VWPA**

To prevail on a claim for unpaid wages under the FLSA, a plaintiff must establish several elements. First, the plaintiff must demonstrate that she was an "employee" within the meaning of the Act. *Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006). Second, the plaintiff must show that the defendant was an "employer" under the FLSA, which includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.*; *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999). Third, the plaintiff must establish that she worked more than forty hours in a workweek or was entitled to minimum wage compensation. *Schultz*, 466 F.3d at 304. Finally, the plaintiff must demonstrate that she was not paid the wages due under the Act. *See Aukhert v. Pritt Inv. Partners, LLC*, No. 1:22-CV-00655 (MSN/WBP), 2024 WL 5410979, at *8 (E.D. Va. Dec. 16, 2024), *report and recommendation adopted*, No. 1:22-CV-00655 (MSN/WBP), 2025 WL 817600 (E.D. Va. Mar. 14, 2025); *Conner v. Cleveland Cnty.*, 22 F.4th 412, 426 (4th Cir. 2022).

Similarly, the VWPA allows employees to recover wages and salaries where an employer knowingly fails to pay such wages or salaries. Va. Code § 40.1-29; *see also Groundworks Operations, LLC v. Campbell*, No. 241092, 2025 WL 3760430, at *6 (Va. Dec. 30, 2025). "Upon

termination of employment an employee shall be paid all wages or salaries due him for work performed prior thereto." Va. Code § 40.1-29(A).

Here, Williams alleges that she was underpaid while employed by Friendship. She asserts that she was assigned to "Pay Grade 9, which corresponds to a wage range of $45.00 - $49.99 per hour." Dkt. 1-1 ¶ 13. Despite her classification, she argues, she was only paid $22.825 per hour. *Id.* ¶ 14. However, Williams does not allege sufficient facts to support a reasonable inference that she was entitled to the higher wage. For example, there is no allegation that Friendship was contractually obligated to classify her at "Pay Grade 9," or that Friendship promised to pay her a particular wage. The mere existence of a pay grade designation in an internal document, without more, cannot establish an entitlement to that wage level.

Furthermore, the FLSA guarantees only a minimum wage, and Williams concedes that she was paid $22.825 per hour—well above the federal minimum wage of $7.25 per hour. Because Williams received more than the minimum wage and does not allege she was owed overtime compensation, her FLSA claim fails as a matter of law. *See Avery v. Chariots For Hire*, 748 F. Supp. 2d 492, 501 (D. Md. 2010) ("The FLSA does not guarantee that employees are paid for every hour of work and does not allow for employees to recover more than the statutory minimum wage." (citing *Blankenship v. Thurston Motor Lines,* 415 F.2d 1193, 1198 (4th Cir. 1969))). The VWPA, in turn, requires payment of wages only when they are "due" to the employee under the terms of employment. Va. Code § 40.1-29(A); s*ee also Smith v. Montalvan,* 723 F. Supp. 3d 454, 466 (E.D. Va. 2024) (applying Virginia law). Because Williams has not alleged facts establishing that she was entitled to wages at the Pay Grade 9 rate, she cannot

establish that any additional wages were actually due to her. Accordingly, Williams has not adequately pleaded facts to state plausible wage claims under either the FLSA or VWPA.

**III.     Constitutional Due Process Claims**

Both the Fourteenth Amendment to the U.S. Constitution and Article I, § 11 of the Virginia Constitution prohibit the government from depriving a person of life, liberty, or property without due process of law. The state and federal due process clauses "have [an] almost exact similarity in language" such that the two can be analyzed in tandem. *McArthur v. Brabrand*, 610 F. Supp. 3d 822, 843 (E.D. Va. 2022) (citing *Carter v. Gordon*, 502 S.E.2d 697, 702 (Va. Ct. App. 1998)).

To establish a due process violation, a plaintiff must show that "she was deprived of a constitutionally cognizable interest in life, liberty, or property by 'some form of state action,' and that the procedures employed by the state were constitutionally inadequate." *Id.* (quoting *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013)). The state action requirement demands that the defendant's conduct be fairly attributable to the state. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). State employees acting within the scope of their employment clearly satisfy this requirement, but private parties may also act under color of state law when they exercise powers traditionally reserved to the state or when their conduct is fairly attributable

13

to the state through conspiracy, joint action, or significant state encouragement. *Lugar*, 457 U.S. at 937; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).

Here, there are no allegations suggesting that Friendship was acting under the color of state law when it underpaid Williams or failed to accommodate Williams's disability. Without evidence of state action, Williams has not stated a plausible due process claim.

## IV. ERISA Claims

ERISA § 502(a)(1)(B) allows a participant or beneficiary "to recover benefits due to him under the terms of his [employee benefit] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Fourth Circuit has confirmed that "unless an employer is shown to control administration of an employee benefit plan, it is not a proper defendant in an ERISA action seeking benefits; rather, the plan is the proper party." *Gluth v. Wal-Mart Stores, Inc.*, No. 96–1307, 1997 WL 368625, at *6 n.8 (4th Cir. 1997) (citation omitted). Here, Williams alleges that Friendship offered a long-term disability plan as a benefit of employment but does not assert that Friendship managed the plan. To the contrary, the documents attached to the Complaint show that the Metropolitan Life Insurance Company, not Friendship, made the decision to deny her long-term disability coverage. *See* Dkt. 1-1 at 34–40. Accordingly, Friendship is not a proper defendant to any ERISA claim.

## V. Discrimination and Retaliation Claims Under Title VII, the ADA, and the VHRA

### A. Discrimination

The *McDonnell Douglas* framework applies to discrimination claims brought under Title VII, the ADA, and the VHRA. *Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, 677 F. Supp. 3d 383, 396 (W.D. Va. 2023) (citing *Laird v. Fairfax Cnty.*, 978

14

F.3d 887, 892 n.4 (4th Cir. 2020)). Under *McDonnell Douglas*, the plaintiff has the additional burden of establishing a prima facie case of discrimination, upon which the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse action. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 575 (4th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The burden then shifts back to the plaintiff to prove that these asserted justifications are pretextual. *Id.* at 575–76 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). To establish a prima facie case of discrimination, a plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012).

Here, Williams has pled that she is a Black woman with a disability. Although her Complaint does not allege specific instances of discrimination, her EEOC charge suggests that she was discriminated against because of her race, gender, and disability. *See* Dkt. 1-1 at 28–29. First, Williams states that while she was out of work on disability leave, she was asked about her return date, failed to provide one, and was subsequently discharged. These facts alone do not show an inference of discrimination. Williams does not allege that similarly situated employees were treated more favorably, or that Friendship deviated from its usual policies. Williams also does not allege that Friendship made statements or took actions suggesting hostility toward her because of her protected status. Friendship's reason for termination—that Williams did not provide a return-to-work-date—may reflect a legitimate business decision rather than discriminatory motive. Second, the EEOC charge states that Williams believes she "was discriminated against because of [her] race (Black), and sex (Female), by being subjected to a

15

difference in pay." *Id.* According to Williams, in January 2024, she "was made aware of a pay disparity between [her] and a former male, employee who held the same position as [her]. He made between $45 and $49 a pay period, whereas [she] made $22.83. No explanation was given for the difference in pay." *Id.* On the merits, these pay disparity allegations, without more facts to show that Williams and the male comparator had substantially equal work, are not sufficient to state a plausible sex discrimination claim. *Compare Wilkerson v. Henderson Cnty.*, No. 1:23-CV-00050-MR-WCM, 2023 WL 7312518 (W.D.N.C. Oct. 6, 2023) (finding insufficient factual allegations to support a pay disparity claim where plaintiff alleged that a white co-worker equal in seniority in a comparable position had a higher salary), *report and recommendation adopted*, No. 1:23-CV-00050-MR-WCM, 2023 WL 7309470, at *4 (W.D.N.C. Nov. 6, 2023), *with Robertson v. Virginia State Univ.*, No. 3:23CV777 (DJN), 2024 WL 1774821, at *14–15 (E.D. Va. Apr. 24, 2024) (allowing Title VII claim to proceed where plaintiff alleged that male colleagues with the same titles and similar educational backgrounds received more pay for performing the same responsibilities under similar working conditions). However, even assuming Williams has established membership in a protected class as a female, adverse action through significantly lower pay, a similarly situated male comparator in the "same position," and an inference of discrimination based on the unexplained pay gap,[3] Williams is nonetheless

---

[3] *Robertson* also prohibits a plaintiff from relying on salary data from before the cutoff date for the statute of limitations even if her claim itself was timely filed. *See Robertson*, 2024 WL 1774821, at *14, *21. But in any case, Williams has not met the statute of limitations for her discrimination claims.

16

procedurally barred from pursuing these claims because she has not met the statute of limitations or exhaustion requirements of Title VII, the ADA, and the VHRA.

### B. Retaliation

Retaliation claims under Title VII, the ADA, and the VHRA share a common framework that protects employees from adverse action for engaging in protected activity. First, the plaintiff must establish that she engaged in a protected activity, which includes filing a charge of discrimination, participating in an investigation or proceeding, or opposing practices reasonably believed to be unlawful under the respective statute. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 67–68 (2006); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015). Second, the plaintiff must demonstrate that she suffered a materially adverse action, meaning an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (internal quotation marks and citation omitted); *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). Third, the plaintiff must prove a causal connection between the protected activity and the adverse action. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998); *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005).

Here, Williams alleges that Friendship retaliated against her "after reporting discrimination and/or wage violations." Dkt. 1-1 ¶ 47. "As a result, Plaintiff suffered adverse employment actions, including withholding employment related benefits, termination, demotion, and harassment." *Id.* ¶ 48. However, Williams does not specify what discrimination she reported, when, or to whom. Williams also does not allege that Friendship was aware of her protected activity at the time of the adverse action, nor does she allege a causal link between her complaints and Friendship's actions. To the extent that Williams's claim relies on her "demands

17

for payment of the unpaid wages," *id.* ¶ 8, she does not explain why such demands qualify as a protected activity. Further, the record indicates that Williams first submitted her discrimination and wage complaints in 2024, well after she stopped working for Friendship. Williams simply makes no allegations that Friendship's alleged discrimination or wage violations were caused by her protected activity. Williams's bare legal conclusions are insufficient to establish a prima facie claim of retaliation.

## VI.     Intentional Infliction of Emotional Distress

Under Virginia law, an IIED claim requires proof of four demanding elements, as the tort is limited to only the most egregious conduct. A plaintiff must demonstrate that: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe. *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006) (citing *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)).

Here, Williams's claim consists of conclusory allegations without factual support. She asserts that Friendship "repeatedly subject[ed] Plaintiff to discriminatory treatment and a hostile work environment; den[ied] Plaintiff rightful wages and compensation despite Plaintiff's repeated demands; retaliate[ed] against Plaintiff for asserting their rights under employment laws; and engag[ed] in fraudulent concealment to mislead Plaintiff and prevent timely legal action." Dkt. 1-1 ¶ 51. However, Williams does not explain how Friendship discriminated against her or created a hostile work environment. Although Williams alleges that Friendship underpaid her, Virginia courts have consistently held that garden-variety workplace disputes, even those involving termination or harsh treatment, typically do not rise to the level of outrageous conduct necessary to support an IIED claim. *See, e.g.*, *Karpel v. Inova Health Sys.*

18

*Servs., Inc.*, No. CIV.A. 96-347-A, 1997 WL 38137, at *7 (E.D. Va. Jan. 27, 1997), *aff'd sub nom. Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222 (4th Cir. 1998) (finding that employer's conduct would not rise to the level of outrageousness required even if plaintiff was fired out of racial animosity or retaliation). Williams also fails to allege any facts or evidence demonstrating that she suffered severe emotional distress. She merely asserts that she "suffered severe emotional distress, including anxiety, depression, humiliation, and mental anguish, requiring medical treatment and significantly impairing their ability to work and function in daily life." Dkt. 1-1 ¶ 52. Without more specificity and support, Williams's IIED claim fails.

### VII.    Conclusion

For the reasons above, Friendship's motion is **GRANTED.** Williams's claims are **DISMISSED WITH PREJUDICE**.

Entered: January 12, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge